Raymond v. Varnum, 185 Ill. App. 289.

# E. P. Raymond, Defendant in Error, v. Clark Varnum, Plaintiff in Error.

## Gen. No. 18,569.

1. JUDGMENT, § 657*—*when direction of verdict in action on foreign judgment not error.* In an action of debt on an Iowa judgment, a direction of a verdict for plaintiff *held* not error under the state of the pleadings.

2. APPEAL AND ERROR, § 1456*—*when striking of pleas cannot be complained of.* Striking of certain pleas of the defendant cannot be complained of where they would have availed defendant of nothing, there being nothing showing leave to file them and the action of the court being within its discretion, and it also appearing that all that could be claimed as material in such pleas was before the court in pleas that were allowed to be filed and to stand and which were successfully demurred to.

3. APPEAL AND ERROR, § 1361*—*when refusal of leave to file plea not an abuse of discretion.* Refusal of leave to file "a plea of payment and discharge" on the eve of the trial, almost five years after the suit was begun, and after defendant on six different dates, authorizedly and unauthorizedly filed pleas, *held* not an abuse of trial court's discretion.

4. APPEAL AND ERROR, § 994*—*when refusal of leave to file additional plea not presented for review.* Refusal of leave to file an "additional plea" cannot be considered where such plea is not preserved or described in the record.

5. PLEADING, § 98*—*when plea of nil debet demurrable.* Demurrer to a plea of *nil debet* to a declaration in debt on a foreign judgment *held* properly sustained.

6. SET-OFF AND RECOUPMENT, § 2*—*when plea of set-off is available.* To make a plea of set-off available, the damages to be set off must be liquidated or they must spring from the same transaction that the action is brought on.

7. SET-OFF AND RECOUPMENT, § 10*—*when claim for damages cannot to be set off in action on a judgment.* In an action on a foreign judgment, pleas of set-off claiming damages for the conversion by plaintiff of certain collateral notes placed in plaintiff's hands at the time defendant executed and delivered to plaintiff certain notes which were made the basis of the foreign judgment, *held* demurrable for the reason that the claim was for unliquidated damages and did not spring from the same transaction.

8. SET-OFF AND RECOUPMENT, § 10*—*right to set off unliquidated damages against a judgment.* Section 33 of the Practice Act, J. & A. ¶ 8570, which provides that "demands upon simple contracts may be set off against demands upon sealed instruments, judgments and decrees," has never been construed to change the rule that unliquidated damages may not be set off against a judgment.

9. SET-OFF AND RECOUPMENT, § 10*—*when allegations of plea do not show damages liquidated.* Allegations of a plea of set-off that certain notes left with plaintiff by defendant as collateral were of a certain amount and represented "honest money due" to the defendant from the maker, and that the maker had sufficient means when they became due so that he could have been compelled by plaintiff to pay the notes, and that the maker afterwards became bankrupt and fled, *held* not sufficient to make certain and liquidated defendant's claim for damages for ·failure of plaintiff to collect from maker, the claim being necessarily unliquidated and dependent on the judgment of a jury upon the trial.

Error to the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term. 1912. Affirmed. Opinion filed March 9, 1914.

Statement by the Court. This writ of error is brought to reverse a judgment in debt for $2,500 rendered by the Circuit Court of Cook county on May 5, 1909, against Clark Varnum, defendant below and

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

plaintiff in error here, in favor of E. P. Raymond, plaintiff below and defendant in error here.

The judgment was rendered on an instructed verdict. The history of the cause and the pleadings therein leading up to such instructed verdict and to the judgment thereon, so far as it appears in the *præcipe* record filed herein, follows:

September 3, 1902, there was rendered in the District Court of Iowa in and for Poweshiek county a judgment in favor of the plaintiff Raymond against the defendant Varnum. As this judgment and its terms form the basis of the cause at bar and the judgment of the Circuit Court of Cook county, we quote entire the copy of the Iowa judgment order, which, duly exemplified under the Act of Congress in relation to the authentication of judicial proceedings, was introduced in evidence below:

"In the District Court of Iowa in and for
Poweshiek County.
September Term, 1902.

E. P. Raymond )
          vs.          )     No. 5572.
Clark Varnum )

Be it remembered that on this day, to-wit, September 3, 1902, the same being afternoon of the second day of the September Term of said Court in said year, this cause coming on for final hearing and trial, plaintiff appearing by H. E. Boyd, his attorney, and the defendant though duly and legally served with due, timely and legal notice of the beginning and pendency of this action by personal service in Poweshiek County, Iowa, came not but herein makes default and is adjudged of record to be in default, and the Court having heard the evidence and the arguments of counsel and being well and fully advised in the premises finds that the averments of the plaintiff's petition are true and that he is entitled to judgment against the defendant in the sum of $1,638.29, defendant being justly indebted to him in that sum on the note forming the basis of this suit.

It is therefore ordered and adjudged by the Court

that the plaintiff shall have and recover of and from the defendant the sum of $1,638.29, with interest thereon from this date at the rate of eight per cent. per annum and the costs of this action including an attorney's fee of $56.38 in favor of plaintiff's attorney taxed at $61.33.''

May 6, 1904, Raymond began in the Circuit Court of Cook county the action here under review. It was an action of debt on the Iowa judgment. He filed a declaration with one special count, setting forth the terms of the judgment, and some consolidated common counts in debt. The *ad damnum* was $2,500.

May 18, 1904, Varnum filed to this declaration five pleas, together with an affidavit of merits. The first plea was *nil debet;* the second *nul tiel record;* the third, that no proper process was issued or served on the defendant in the action resulting in the alleged judgment, by reason whereof the court in Iowa was without jurisdiction; the fourth, in set-off, that the plaintiff was indebted to the defendant in a larger sum than that claimed to be due from the defendant to the plaintiff, in that on February 24, 1894, the defendant gave the plaintiff, as collateral security, two promissory notes made by one Henriques, payable to the defendant or order, each for $1,250, one payable February 20, 1895, and one payable February 20, 1896, and that on February 20, 1896, the plaintiff "converted, took, kept and put to his own use the said two promissory notes," etc.; the fifth, a plea in set-off, based on the same transaction as the fourth, but in detail asserting that the defendant indorsed said Henriques notes in blank and gave them to the plaintiff, that the plaintiff agreed to hold them as collateral security, that when the first note became due the plaintiff made no effort to collect them, but kept said notes in Iowa and refused to collect the same or forward the same to the place of business of Henriques in Illinois, and until after the said notes became due refused to collect them or allow the defendant to collect them or to account

to defendant for their value. The plea further alleged that when the notes became due Henriques was solvent and in the State of Illinois, but afterwards, while the plaintiff held the notes, became insolvent and fled from Illinois, by reason of all which the defendant became damaged to the amount of $5,000, which the defendant was ready to set off, etc.

June 6, 1907, the plaintiff filed a general demurrer to the plea of *nil debet,* a replication of *prout patet per recordum* to the plea of *nul tiel record,* a replication to the third plea, traversing it and alleging due and proper service of process on the defendant in and for the District Court of Poweshiek county in Iowa, and to each of the fourth and fifth pleas, a general and special demurrer, the special grounds of demurrer being (a) that the suit was based on a judgment of a court of record in Iowa, wherein process was duly served on the defendant; (b) that the claim of the defendant was alleged in the plea to have become due from the plaintiff before the judgment sued on; (c) that the action at bar sounded in contract and the conversions alleged in the plea sounded in tort, and therefore were not "the subject of defense, by way of recoupment, set-off or otherwise to plaintiff's cause of action."

June 22, 1907, the demurrers to the first, fourth and fifth pleas of May 18, 1904, were sustained.

July 2, 1907, an order was entered requiring the defendant to plead to "the plaintiff's declaration as amended," but the *præcipe* record does not show the amended declaration nor in what respect the declaration of May 6, 1904, was changed by any amendment that was made.

July 10, 1907, the defendant filed pleas. The first was expressed to be to "the second count or consolidated common counts," and was *non assumpsit.* The second was also to "the second count or consolidated common counts of the plaintiff's declaration, and was *nil debet.* The third plea was expressed to be to the first count and was, like the third plea, filed May

18, 1904, that no proper process in the Iowa suit was issued or served on the defendant, but contained an allegation also that the defendant did not "owe the money" in said first count mentioned; the fourth plea was to the whole of the plaintiff's declaration and alleged a set-off, and prayed "judgment against the plaintiff for $5,000." Like the fourth plea of May 18, 1904, it alleged the conversion by the plaintiff of the two Henriques notes, but alleged further that said notes were delivered to the plaintiff as collateral security, as a part of the same transaction by which the defendant became indebted to the plaintiff in the sum of $3,300 on two promissory notes executed to the plaintiff by the defendant under date of February 24, 1894, and that the judgment in Iowa set out in the first count of the plaintiff's declaration was based solely and exclusively upon the remainder of said debt of $3,300, which had not been paid in cash at the date of said judgment. The fifth plea contained the same allegations as the fifth plea of May 18, 1904, and the additional ones immediately before mentioned as in the fourth plea of July 10, 1907.

September 20, 1907, the plaintiff filed separate demurrers to the first, second, fourth and fifth pleas of July 10, 1907. To the first and second pleas the demurrers were general, to the fourth and fifth they were both general and special, and set up the same special causes as did the demurrers filed June 6, 1907, to the fourth and fifth pleas filed May 18, 1904. To the third plea of July 10, 1907, the plaintiff filed on September 20, 1907, a replication like that filed by him on June 6, 1907, to the third plea of May 18, 1904. It asserted that due process was issued and served on the defendant in the Iowa suit.

September 28th an order was entered which speaks of "the additional pleas of the defendant heretofore on July 10, 1907 filed herein," and leave was by said order "given to the defendant to withdraw the first and second additional pleas filed herein as aforesaid,"

and in the same order, "the demurrer of the plaintiff to the fourth and fifth pleas of the defendant heretofore on July 10, 1907, filed herein    *    *    *    is sustained." October 14, 1907, two further pleas, entitled respectively "Additional Plea" and "Second Additional Plea," were filed. They were respectively identical with the fourth and fifth pleas of July 10, 1907.

December 19, 1907, an order was entered "on motion of defendant's attorney" giving the defendant leave to file two additional pleas to the declaration, and on the same date two pleas were filed. The first of these was in the form of a declaration in *assumpsit* on the consolidated common counts alleging damages in the sum of $5,000 for breach of the promise, and concluding: "Therefore the said defendant brings this suit by way of set off to and against any claim which the plaintiff has against defendant, and defendant prays judgment against plaintiff for five thousand dollars and costs."

The second of these pleas of December 19, 1907, was in all material matters to the same purport and effect as the fifth plea of July 10, 1907, and the second plea of October 14, 1907. It added, however, the allegation that at the maturity of the collateral notes mentioned the defendant Varnum demanded that said plaintiff Raymond should bring suit against Henriques and that the plaintiff refused.

December 20, 1907, the plaintiff filed a general and special demurrer, stated to be to "the first, second and third additional pleas" of December 19, 1907, although but two such additional pleas had been filed. The special causes of demurrer assigned were (a) that it did not appear the alleged matters of set-off arose after the rendition of the judgment sued on by the plaintiff; (b) nor that the supposed set-off was of liquidated damages; and (c) that the matters set forth in said pleas were not proper matters of set-off upon a demand based on a foreign judgment. The plaintiff also filed a general and special demurrer, stated to be

to the *fourth* additional plea filed December 19, 1907. No such plea appears in the record. The special causes of demurrer given are the same as those assigned in the demurrer to the "first, second and third additional pleas" of December 19, 1907, and the further one that "said plea is double."

February 1, 1908, an order was entered to amend the record of the order of September 28, 1907, so as to make it show that it was the *demurrers* to the first and second pleas of July 10, 1907, that were withdrawn, instead of the first and second pleas, which were still to stand.

Further the order provided that the pleas filed October 14, 1907, might be refiled as of December 19, 1907. The plaintiff was required to answer them within three days. February 4, 1908, the plaintiff filed a general and special demurrer to "the first plea    *    *    * pleaded on October 14, 1906, and    *    *    * ordered refiled as of December 19, 1907," specially alleging as causes (a) that the plaintiff's demands sounds in con-tract while the supposed conversion sounds in tort and is not alleged to have grown out of the subject-matter of the plaintiff's demand, and is not therefore available in recoupment or set-off; (b) that the supposed damages set up by the plea were not liquidated damages. The plaintiff filed also February 4, 1908, a demurrer to "the second plea of October 14, 1906,    *    *    * ordered refiled as of December 19, 1907," alleging as a special cause of demurrer that "it does not appear by said plea that the damages arising out of the supposed cause of action set up by way of set-off are or were liquidated damages or that the subject matter of defendant's plea grew out of the same subject matter with the plaintiff's demand."

February 8, 1908, an order was entered:

(1) Striking out the first and second pleas of the defendant filed October 14, 1902; (2) sustaining the plaintiff's demurrers to the first, second, third and fourth pleas of December 19, 1907; and (3) "dis-

missing'' the common counts of the plaintiff's declaration.

February 15, 1908, the order of February 8th was amended so far as to make it show that the plaintiff's demurrers to all the pleas filed December 19, 1907, were sustained. The record shows that on the same day defendant offered to file an additional plea and was refused such leave, the tendered plea being identified by being marked "tendered February 15, 1908," but not appearing in the record. February 4, 1909, the defendant filed "An Additional Plea" setting up the same matter as is contained in the second plea of December 19, 1907, the fifth plea of July 10, 1907, and the second plea of October 14, 1907, but incorporating therewith an instrument of the date of February 24, 1894, signed by plaintiff and defendant, describing the collateral notes in said plea mentioned with certain certificates of stock, as collateral security for the notes of Varnum given to Raymond and containing a stipulation that Raymond "agrees that he will hold such collateral according to the law and usage governing the receiving and holding of collateral securities." The plea asserts that the original note, the collateral note and the said instrument were all one transaction, and that the alleged judgment on which the suit is brought "is merely a change of the form of indebtedness from the said balance due upon said debt evidenced by the defendant's promissory notes made to the plaintiff * * * from the form of the notes * * * to the form of a judgment."

April 17, 1909, the plea filed February 4, 1909, was by order stricken from the files.

April 28, 1909, an order was entered denying leave to the defendant "to file plea of payment and discharge."

May 5, 1909, the cause came on for trial. The plaintiff offered the authenticated copy of the judgment sued on and rested. The defendant offered to prove as a ground of set-off the matter set up in the various

pleas filed and offered to be filed by him, but all such evidence was, on the objection of the plaintiff, ruled out, and the only evidence offered by the defendant which was admitted were certain sections of the Code of Iowa concerning interest, one of which is to the effect that interest shall be allowed on all money due on judgments and decrees of court at the rate of six per cent. unless a different rate is fixed by the contract on which the judgment or decree shall draw interest at the rate expressed in the contract, not exceeding eight per cent., which rate must be expressed in the judgment or decree.

The court then, on motion of the plaintiff, instructed the jury to find for the plaintiff in the sum of $2,500, and, on the verdict thus instructed, entered the judgment herein attached, after a motion for a new trial and a motion in arrest of judgment had been denied.

The assignments of error in this court cover each case of sustaining demurrers to the defendant's pleas, the refusal of leave to the defendant on February 15, 1908, to file an additional plea, the striking from the files on April 17, 1909 of the pleas filed February 4, 1909, the refusal of leave to the defendant on April 28, 1909, to file plea of payment and discharge, the instruction to find for the plaintiff and the denial of the motions for a new trial and for arrest of judgment. The other assignments of error relate principally to the rejection of the evidence by which the defendant sought to prove his alleged set-off, to the ruling of the court that there could be no recoupment under the general issue in a case brought in debt upon a foreign judgment, and to the refusal by the court to allow the defendant to offer evidence showing that the notes resulting in the Iowa judgment bore only seven per cent. interest.

S. R. CLUTE, for plaintiff in error.

SAMUEL B. KING and WILLIAM B. WARD, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

As the parties differ as to the pleadings on which this cause was tried in the court below, we have at some length set forth in the preceding statement those pleadings and the orders made concerning them. It appears plainly enough that the case went to trial under: *First*, plaintiff's declaration in debt (whether "amended" or not, according to the description in the order of July 2, 1907, there is no way of telling from this *præcipe* record), which contained a special count on the Iowa judgment involved, but did not contain any common counts, such common counts being withdrawn or "dismissed" on February 8, 1908, and the pleas made expressly to them of course falling with them; *second*, defendant's plea of *nul tiel record* to the special count filed May 18, 1904, with a proper replication by plaintiff "*prout patet recordum;*" *third*, defendant's plea filed May 18, 1904, that there had been no service of process on the defendant in the suit in which said Iowa judgment had been rendered, and a traverse thereof by the plaintiff, and a practically identical plea and traverse filed July 10, 1907. (The "*nil debet*" inserted in the plea was no answer to this count of the declaration and must be disregarded.)

No attempt was made by the defendant at the trial to prove his plea against the case made by the recital of service in the authenticated copy of the judgment offered. The plea of *nul tiel record* raised, as the Supreme Court says, in *Waterbury Nat. Bank v. Reed*, 231 Ill. 246, "only one question, and that is whether there is a record of a judgment corresponding to that set out in the writ, and that question is one to be deter-

mined by the court from an inspection and examination of the record itself."

As the pleadings stood, therefore, the court did not err in directing a verdict for the plaintiff.

There are other antecedent errors complained of. One is in the striking of certain of defendant's pleas on February 8, 1908, and April 17, 1909, as detailed in the statement prefixed hereto. Even if this question had been properly preserved by an exception shown by the bill of exceptions, it would have availed defendant nothing. There is nothing showing leave to file said pleas, and the action of the court was within its discretion. All that could be claimed as material in the said pleas was however before the court in pleas that were allowed to be filed and to stand and which were successfully demurred to as hereafter recited.

Another alleged error was the refusal to defendant on April 28, 1909, of leave to file "a plea of payment and discharge." This was almost five years after the suit was begun, on the eve of trial, and after the defendant had on six different dates, authorizedly and unauthorizedly, filed pleas. We do not think the court abused its discretion in refusing the leave. Nor do we believe that it did so on February 15, 1908, in refusing leave to file "an additional plea"; but in any case we could not judge it to have done so, for the "additional plea" is not preserved or described in the record before us.

There can be no serious claim that the demurrer to a plea of *nil debet* to a declaration in debt on a judgment was not properly sustained.

The only question, therefore, which rises to any importance in the case before us is whether the court rightly sustained demurrers to various pleas of set-off of the defendant, which sought to set off damage suffered by him from the alleged violation of a duty owed to him by the plaintiff in relation to certain collateral notes of a third party, placed by him in the plaintiff's hands contemporaneously with the execu-

tion and delivery by him to the plaintiff of the notes sued on in Iowa and made the basis of the Iowa judgment.

We think the demurrers were properly sustained. In order to make a plea of set-off available, the damages to be set off must be liquidated or they must spring from the same transaction that the action is brought on. The defendant claims that in the case at bar the damages alleged by him in the way of set-off are liquidated and also that they spring from the same transaction as the debt sued on. We hold to the contrary as to both propositions.

Notwithstanding the statement in plaintiff in error's brief regarding the quality of the intellect that can see any difference between a judgment and the obligation on which that judgment is founded, we continue to think that there is, in deciding in the case at bar whether the set-off pleaded arose "out of the same transaction" as the plaintiff's claim, a great difference between the notes and the judgment founded on them. It is a difference not in form merely, but in essence. The defendant had his day in court on the "transaction" in which the notes were given when he was sued in Iowa. He might then have pleaded his set-off had he wished. He chose to make default, and an entirely new form and character of indebtedness arose from the "transaction" in the Iowa court which resulted in a judgment. If a man might in answer to a suit on a judgment plead whatever might, by way of set-off or recoupment, have been a defense to the suit in which the judgment was obtained, there would be a great loss of finality in litigation.

Defendant calls attention to section 33 of the Practice Act, which provides that "demands upon simple contracts may be set off against demands upon sealed instruments, judgments and decrees."

But this provision has never been construed to change the rule that unliquidated damages may not be set off against a judgment, or, in other words, to con-

tain any implication that the "transaction" in court, out of which a judgment or decree arises, can have in it the basis of any claim which can be made in set-off. It may be that damages arising out of the same judicial "transaction" which produced the judgment are conceivable, but none such suggest themselves to our minds as possible.

The damages to be set off against a judgment then must be "liquidated," which brings us to the determining question in this case. As we have said, we do not regard as "liquidated" those claimed by the defendant because of the alleged breach by the plaintiff of a contract "to hold" certain notes deposited with him "according to the law and usage governing the holding and receiving of collateral security."

We think that the Supreme Court of Michigan was right in *Mitchell v. Shuert*, 16 Mich. 444, in saying that such damages are "necessarily unliquidated," a conclusion for which the reasons in an analogous case are thus set out by the report of an arbitrator, affirmed by the Court of Appeals of Virginia in *Harrison v. Wortham*, 8 Leigh 296.

"I know of no better rule as to the damages which may be the subject of set-off than this, that they must be liquidated, and (where they do not grow out of a specialty) such as *indebitatus assumpsit* will lie for. In this case, it seems to me, the damages could not be recovered in an action of *assumpsit for the payment of money;* but the action would be one setting forth the implied undertaking to use due care in the collection of the bill; charging a breach of that undertaking, and a consequent loss to the plaintiff, and claiming damages for that loss. These damages must be regarded as unliquidated and uncertain."

This construction of the term "liquidated damages" does not differ from that adopted by the Appellate Court of the Fourth District in *Horn v. Noble*, 95 Ill. App. 99, and by this court in *Smith v. Billings*, 62 Ill. App. 77, and by the text writers in 19 Amer. & Eng.

Encyc. of Law, p. 395, and 24 Amer. & Eng. Encyc. of Law, p. 511.

The allegations of the pleas demurred to, that the notes left as collateral were of a certain amount and represented "honest money due" to the defendant from their maker, and that the maker had sufficient property and means when they came due so that he could have been compelled to pay said notes, and that he afterward became bankrupt and fled, are not sufficient to make certain and liquidated what is "necessarily unliquidated" and dependent on the judgment of a jury upon a trial. It would be for them to say, under all the circumstances, what damages the plaintiff had inflicted on the defendant, not by default in the payment of a stipulated sum of money, but by breach of an obligation to carry on certain proceedings, legal or otherwise, the proper nature of which would be a still further object of investigation.

The judgment of the Circuit Court is affirmed.

*Affirmed.*